**In re James A. CUNNINGHAM and Beatrice C. Cunningham, Debtors.**

**James A. Cunningham, Plaintiff,**

**v.**

**Joanne Cunningham, Defendant.**

**Bankruptcy No. 02–92319.
Adversary No. 02–9077.**

United States Bankruptcy Court, C.D. Illinois.

May 29, 2003.

Thomas M. O'Shaughnessy, Attorney at Law, Danville, IL, for debtors.

## OPINION

GERALD D. FINES, Chief Judge.

This matter having come before the Court for hearing on a Complaint to Determine Dischargeability filed by Plaintiff on October 21, 2002; the Court, having reviewed the Stipulation of Facts and written memoranda of law submitted by the parties, and being otherwise fully advised in the premises, makes the following findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

## Findings of Fact

Following the pre-trial hearing in this matter, the parties agreed, on April 1, 2003, by a Joint Motion for Extension of Time and continuance, that the Court could decide the issues presented in the Complaint to Determine Dischargeability based upon a written Stipulation of Facts and briefs submitted by the parties. The parties further agreed to waive oral argument and to submit the case to the Court purely in written form. The material facts in this matter are not in dispute and are, in pertinent part, as follows:

1. On April 22, 1969, a Decree of Divorce was entered by the Circuit Court of the Fourteenth Judicial Circuit, Rock Island County, Illinois (hereinafter the Circuit Court), which, among other things, dissolved the parties' marriage and awarded to Joanne the custody of the parties' three children, namely Bridget Cunningham, born June 23, 1961; Craig Cunningham, born July 21, 1962; and Erik Cunningham, born December 19, 1963.

2. The Decree of Divorce ordered James to pay the sum of $35 per week to Joanne "as and for the child support of the minor children ... until the minor children have reached the age of twenty-one (21) years or are sooner emancipated."

3. Thereafter, an order was entered on October 6, 1969, wherein the Circuit Court found James to be in arrears in his child support obligation in the amount of $865.

4. On May 6, 1970, another order was entered by the Circuit Court wherein James was found to be in arrears in his child support obligation in the amount of $1,670.

5. On May 15, 1970, an order was entered by the Circuit Court whereby James was committed to the Rock Island County jail for a period of thirty days unless he purged himself of his contempt of court by paying the entire child support arrearage ($1,985) as well as other costs and fees.

6. James served his jail sentence pursuant to the May 15, 1970, order.

7. Thereafter, an order was entered on September 1, 1978, by the Circuit Court wherein James was found to be in arrears in child support in the amount of $10,895.

8. The September 1, 1978, Order also contained a stipulation of the parties which provided in relevant part that:

1. [James] pay to [Joanne] the sum of Sixty Five Dollars ($65.00) per week commencing August 25, 1978 . . . for a period of four (4) years. Thirty Five Dollars ($35.00) of this amount shall pay for current weekly child support payments until the children reach eighteen (18) years of age. Thirty Dollars ($30.00) shall be applied to the arrearage. Child Support payments of Thirty Five Dollars ($35.00) per week shall not be diminished as any one of the three (3) minor children of the parties hereto reach the age of eighteen (18) years. After the payment of said sum of Sixty Five Dollars ($65.00) per week for a period of four (4) years, [James'] child support obligation shall cease and be satisfied in full including his obligations of the child support for which he is in arrears.

2. [Joanne] shall claim the three (3) minor children as exemptions on her state and federal income tax.

4. This cause is continued generally for any ruling by the court as to contempt, and the court shall retain jurisdiction of this cause for enforcement of this order until August 25, 1982.

9. The youngest child of the parties, Erik Cunningham, achieved the age of majority on December 19, 1981.

10. James failed to make all of the payments required by the September 1, 1978, Order.

11. Bridget Cunningham turned twenty-one years of age on June 23, 1982; Craig Cunningham turned twenty-one years of age on July 21, 1983; and Erik Cunningham turned twenty-one years of age on December 19, 1984.

12. No petition to enforce the September 1, 1978, Order was filed until November 15, 2001, when Joanne filed a Petition to Establish Arrearage on Child Support Account and for Judgment in the Circuit Court.

13. In an Opinion and Order dated January 31, 2002, the Circuit Court found that the parties had agreed that an arrearage exists under the prior orders in the amount of $19,580. The Circuit Court entered judgment against James in that amount and further imposed judgment interest in the amount of $30,134.96; all totalling $49,714.96.

14. On May 16, 2002, counsel for Joanne caused to be filed a Certification of Judgment in the Circuit Court and mailed a copy of the same to James, then residing at 1618 Oak Street, Danville, Illinois.

15. On May 16, 2002, Joanne caused to be issued by the Circuit Court a Citation to Discover Assets in an effort to collect the judgment.

16. On July 25, 2002, James filed his voluntary Chapter 7 petition for relief under Chapter 7 of the Bankruptcy Code with this Court.

17. On September 19, 2002, Joanne filed a Petition for Rule to Show Cause in the Circuit Court as a result of James' failure to appear at the Citation hearing.

18. The Circuit Court then caused to be issued a Rule to Show Cause commanding James to appear and to show cause as to why he should not be punished for contempt of Court for his failure to appear at the Citation hearing.

19. On October 21, 2002, James filed a Motion to Stay Action which asked this Court to stay the collection and enforcement of the judgment pending the determination of this adversary proceeding.

20. On October 21, 2002, James filed his Complaint to Determine Dischargeability wherein James seeks an order from this Court determining that the judgment entered by the Circuit Court, on January 31, 2002, does not constitute an obligation in the nature of child support, and is, therefore, dischargeable in bankruptcy.

21. On October 22, 2002, the Citation to Discover Assets was dismissed in the Circuit Court.

22. This Court, on November 6, 2002, entered an Order allowing the Motion to Stay Action and no further proceedings to enforce the judgment in the Circuit Court have occurred.

23. On or about December 19, 2002, Joanne filed an Answer to the Complaint to Determine Dischargeability.

24. James and Joanne have each filed a Pre–Trial Memorandum pursuant to the Order of this Court.

25. All three of the parties' children are emancipated. None of the children were emancipated prior to reaching the age of twenty-one years.

### Conclusions of Law

■ The issue before the Court is governed by 11 U.S.C. § 523(a)(5)(B), which states:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—. . .

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement, but not to the extent that—. . . .

(B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support;

The main thrust of the Plaintiff's argument that the debt in question is dischargeable pursuant to 11 U.S.C. § 523(a)(5)(B) centers around the fact that the children for which the child support arrearage judgment was entered were emancipated long before entry of the judgment. For this reason, Plaintiff argues that the judgment cannot be found to be in the nature of support. This Court disagrees with Plaintiff's argument and finds that the judgment is clearly in the nature of support because its effect is to essentially reimburse the Defendant for monies which she spent supporting the children of the parties without the help of the Plaintiff, even though he was under an order to do so.

■ The Plaintiff/Debtor has the burden of proving that the debt in question is dischargeable in bankruptcy under 11 U.S.C. § 523(a)(5)(B). The Plaintiff must meet his burden of proof by a preponderance of the evidence. *In re Daulton,* 139 B.R. 708 (Bankr.C.D.Ill.). Exceptions to discharge are generally construed narrowly to give effect to the goal of a fresh start; however, exceptions from discharge for spousal and child support are given a more liberal construction, and the policy considerations underlying that section of the Bankruptcy Code favor enforcement of support obligations over the debtor's fresh start. *In re Kemp,* 242 B.R. 178 (8th Cir. BAP 1999).

■ In applying the criteria set forth by this Court in the case of *In re Daulton, supra,* the Court has no difficulty in deter-

mining that the debt in question is in the nature of child support. The Plaintiff in this case failed to pay the vast majority of child support which was long ago ordered by the State Court, and that support was not paid even after attempts to enforce the obligation following the emancipation of the children of the parties. As the Court stated in *Kemp*, the nature of the debt is more important than the identity of the payee for the purposes of determining non-dischargeability. To hold otherwise would reward a parent who failed to pay child support during the time children were minors with a discharge in bankruptcy to the detriment of the parent who carried the burden alone.

Although it is an old case, the Court finds that the case of *Hylek v. Hylek*, 53 F.Supp., 657 (N.D.Ind.1944) *affd.* at 148 F.2d 300 (7th Cir.) accurately sets out the policy supported by this Court in stating:

Is the nature of the obligation or claim changed by the fact that the parties children were emancipated when the Defendant asked for her Judgment? The answer is that Section 17 (now Section 523(a)(5)) imports past due liability as well as present and future liability, if any. True, the Plaintiff has no present duty to support his children. The duty he had in that regard has accrued and is past due. It is now in the form of a Judgment. The natural and moral and legal duty that he did have to support his children is still existing because he has not discharged it. He has not discharged the duty, although the children themselves were not deprived of the support which he was bound by law and morals to furnish. That support which he was under an obligation and order to supply was furnished by the Defendant and, in a sense, she has become subrogated to the rights of her children to look to the father for support during their minority, which rights were de-

fined and limited by a Court Order of 1931.

The logic followed in *Hylek* is also found in the case of *In re Tyler*, 38 B.R. 265 (Bankr.N.D.Ill.1984), where the Court stated:

Few people will argue seriously that a person should not support his or her children... The Bankruptcy Code is in accord, ... if a decree orders the payment, the debt is not dischargeable.

Having found that the debt in question is non-dischargeable pursuant to 11 U.S.C. § 523(a)(5)(B), the only issue that remains before the Court is to determine the amount of the debt which is non-dischargeable. In reviewing the Stipulation of Facts of the parties, the Court must conclude that the child support obligation of the Plaintiff was clearly modified by the State Court in an order entered on September 1, 1978. The order entered at that time was clearly an order taking care of not only arrearages which existed prior to September 1, 1978, but also modified support payments as they came due thereafter. Given this clear modification, this Court must find that the non-dischargeable arrearage in this case is the sum of $10,695. The Court further finds that this sum should carry interest at the rate of 9% per annum from the date of January 31, 2002, until the judgment is paid in full.